REGAN, Judge.
The plaintiff, James T. Dearing, filed this suit against the defendants, Reading and Bates Offshore Drilling Company and the Employers Group Insurance Company, its liability insurer, pursuant to the Jones Act[1] and the warranty of seaworthiness emanating from the general maritime law, in an endeavor to recover the sum of $200,-000.00 representing personal injuries incurred as a result of a fall aboard the defendant’s vessel, the J. W. Bates. He also requests the rendition of a judgment for maintenance and cure in the amount of $15,-000.00.
The defendant[2] answered and denied the foregoing accusations of negligence and in the alternative it asserted that the plaintiff’s injury was sustained as a result of his own fault and inattention.
The judge of the lower court found that the defendant’s ship was unsafe and unsea-worthy, and the area in which he fell was an unsafe place within the sense of the Jones Act. He consequently concluded that the plaintiff was entitled to recover $1750.00 for his injury plus $550.00 representing lost wages. He also reasoned, as a result of the evidence adduced herein, that in conformity with the doctrine of comparative negligence, which emanates from the Jones Act, that the plaintiff was 50% negligent. Therefore, the trial court rendered judgment in the amount of $875.00 for his injuries plus $275.00 for lost wages, resulting in a total award of $1150.00.
From the foregoing judgment, the plaintiff has prosecuted this appeal. The defendant has answered the appeal requesting that the decree be reversed and that the plaintiff should be required to assume the costs incurred in both courts.
The record reveals that on October 18, 1964, the plaintiff was employed as an able-bodied seaman aboard the defendant’s vessel, the J. W. Bates. On that date, he asserts that he injured his back as the result of a fall on a stairway which was in close proximity to the shower room of the vessel.
The evidence, although somewhat conflicting, tends to reveal that the stairway or ladder on which the plaintiff fell was constructed of steel, and that the treads thereof were smooth and slippery as a result of the application of several coats of paint which was not of the skid proof type. Moreover, the evidence also indicates that the steps were wet as the result of water leaking thereon from the shower room.
The record further discloses that the plaintiff completed the balance of his ten *394 day shift aboard the drilling tender, took five days off, returned to the vessel and then departed after six days of work on the next shift. He received wages until his departure and maintenance through January 15, 1965, despite the fact that he was treated and discharged from the Marine Hospital as fit for duty on December 2, 1964.
The oral argument of respective counsel in this court clearly points out that the principal question posed for our answer is whether the trial judge erred in finding that the plaintiff was fit for duty as of December 2, 1964. The plaintiff, of course, insists that the lower court erred in so finding in view of the uncontradicted testimony of his treating physician, Dr. Salatich, that for a period of approximately six months thereafter, he was unfit for duty because of disability resulting from muscle spasm and limitation of motion.
In compliance with the request of the defendant’s insurance representative, the plaintiff’s injury was treated in the Marine Hospital located in the City of New Orleans. His condition was diagnosed as “lower back syndrome”. The records thereof disclose that muscle spasm was evident in the plaintiff’s lower back, with indications of pain primarily in his left leg, with numbness on the dorsum of the left foot. The treating physician who attended him in the hospital noted that the plaintiff complained of pain in almost all positions and that tenderness existed in the area of the fourth and fifth lumbar vertebrae. Medicine and physical therapy were ordered, and it was inscribed in the hospital records that over the course of the prescribed treatment the plaintiff appeared to improve. Prior to December 2, he was pronounced unfit for duty. However, on that date, which was the last time he visited that hospital, he was discharged as fit.
The focal point upon which the plaintiff predicates this appeal is that on the day that he was discharged as fit for duty an inscription entered in the hospital records by his physical therapist revealed that a minimum of spasm still existed in his back. This entry therein reads:
“12/2/64. Patient complains of severe pain persisting. He does appear to have fairly good motion of his L-5 area with minimum of spasm. He states he feels his pain has increased since starting exercises. They were dispensed with today.”
Thereafter, the plaintiff visited his own physician, Dr. George Smith, who referred him to Dr. Blaise Salatich, an orthopedic specialist, for examination.
Dr. Salatich’s laborious testimony, as usual, tends to indicate that the plaintiff’s injury was serious and disabling. In all, he was treated in this physician’s office on twenty-three occasions between December 11, 1964, and June 11, 1965. Dr. Salatich asserts that he found muscle spasm upon examination, and prescribed therapy, muscle relaxants, pain pills, and other surface treatment. In addition to the spasm, he discovered a flattening of the plaintiff’s low back area with a loss of the normal lumbar lordotic curve, together with palpable soft tissue tightness.
Moreover, he asserted that the plaintiff’s condition prevented him from being fit for duty, and actually worsened during the first several weeks of treatment. He explained that on January 27, 1965, he fitted him with a corset, which improved his condition.
In conclusion, this physician recommended that he undertake a trial period of light work, which he suggested should be observed for approximately three months with intermittent treatment.
In contradiction to the medical evidence adduced therein by the plaintiff, the defendant offered the testimony of Dr. R. C. Grunsten, who qualified as an expert in the field of orthopedics.
It was the opinion of this examiner that the findings of the Marine Hospital were absolutely correct, and that the plaintiff was fit for work on December 2, 1964. He thus rejected Dr. Salatich’s evaluation of the plaintiff’s condition.
*395 The foregoing illucidation reveals that the question of when the plaintiff’s disability ceased was one of medical fact posed for the trial court’s consideration. The judge thereof obviously accepted the defendant’s version of the medical facts involving the termination of the plaintiff’s disability, and, therefore, reasoned that he was fit for duty as of December 2, 1964, which was in conformity with the conclusion reached both by the Marine Hospital and Dr. Grunsten.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a more protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the length of the plaintiff’s disability.
The trial judge accepted the defendant’s version thereof, and our analysis of the record convinces us that the evidence preponderates in its favor and the judgment is, therefore, correct.
We are also of the opinion that the foregoing rationale is likewise applicable to the plaintiff’s argument that the trial court erred in finding negligence on his part. The record reveals that he was fully aware of the slippery condition of the steps leading from the shower room; that he chose to descend the ladder without holding upon the railing, and that his shower shoes were worn smooth. Confronted with these militant facts, we are unable to detect manifest error in the trial court’s pronouncement that the plaintiff was 50% negligent.
For the foregoing reasons, the judgment of the lower court is affirmed.
The plaintiff is to pay the costs of this appeal. The defendant is to pay all other costs incurred herein.
Affirmed.

. 46 U.S.C. § 688.

. The suit against Employers Group was dismissed upon its exception of no right or cause of action, which was predicated on the inapplicability of B..S. 22:655, the Direct Action Statute, because the plaintiff’s injuries occurred beyond the twenty-mile limit and were thus outside the scope of Louisiana law.